**W. C. CASE, Appellant,**

v.

**Dan C. ABRAMS, Appellee.**

**No. 8014.**

United States Court of Appeals
Tenth Circuit.

Oct. 25, 1965.

Charles Hill Johns, Oklahoma City, Okl., for appellant.

Robert G. Grove, Oklahoma City, Okl., for appellee.

Before MURRAH, Chief Judge, and HILL and SETH, Circuit Judges.

MURRAH, Chief Judge.

Two related questions are presented on this appeal: (1) whether the trial court erroneously refused to instruct on a matter not within the pre-trial order, but about which some testimony was admitted without objection; and (2) whether the trial court abused its discretion by excluding a defense witness not mentioned in the pre-trial order.

The claim, based on diversity and requisite amount in controversy, is that the appellant, Case, and Appellee, Abrams, entered into an oral partnership for the sole purpose of selling certain oil well drilling equipment for the owner and equally dividing the commissions realized from such sale; that through their joint efforts the equipment was sold, commissions in the sum of $39,862.18 were realized and paid to Case who paid Abrams only the sum of $3,000, leaving a balance due of $16,931.09.

The amended answer admitted that the parties had discussed and negotiated for the sale of certain oil properties belonging to Barbour Drilling Company, including leases, mineral rights and drilling equipment; that Abrams was to sell the leases and mineral rights and assemble the drilling equipment at a central point; that Case would conduct an auction sale of the drilling rigs, and the partners would divide the commissions equally. Case denied, however, that an agreement for the sale of the Barbour properties was ever consummated, but asserted instead that he effected an agreement with Barbour Drilling Company whereunder his employer, Miller Auction Company, bought the drilling equipment only and disposed of it at auction sale; that Abrams had nothing whatsoever to do with the transaction except to assemble the equipment as an employee for a trucking company who was paid by Miller Auction Company for trucking service. Further answering Case stated that Abrams demanded a portion of the commission for services performed in the sale of the equipment and "although realizing that the plaintiff had no claim to any portion of his commission, [Case] paid him the sum of $3,000 in full satisfaction of the plaintiff's claim and for a full settlement of the controversy between them."

After full discovery and pursuant to a pre-trial hearing, the Court entered a pre-trial order in which the parties agreed that the Barbour drilling equipment was purchased by Miller without any contribution from either Abrams or

Case and that Miller paid Case a total sum of $39,862.18 as his part of the proceeds from the sale; that Case paid Abrams "the sum of only $3,000" and that "the amount that plaintiff (Abrams) is entitled to herein, if any, is $16,-931.09." The pre-trial order further significantly recited that by agreement "the only matter of controversy and to be determined to a jury would be whether or not a partnership existed between plaintiff and defendant." The jury was then instructed on the law of partnership and " * * * if you find and believe from a fair preponderance of the evidence in this case that there did exist a partnership agreement between the plaintiff and the defendant, it will be your duty to return a verdict in favor of the plaintiff", and in that event " * * * it has been stipulated by the parties that he is entitled to recover the sum of $16,931.-09." Alternatively, the jury was instructed that if they found that a partnership did not exist, the verdict should be for the defendant. No objections or exceptions were taken to these instructions, but at the conclusion the Court was requested to further instruct to the effect that if the jury found that the checks evidencing payment to Abrams were in full and complete satisfaction of his claim, its verdict should be for the defendant. The Court sustained the objection to the request on the grounds that the issue was not within the pre-trial order.

Case does not deny the sufficiency of the evidence to support the jury's verdict on the partnership issue, nor does he claim that the settlement issue was within the pre-trial order or that he ever moved to modify the order to include the issue. He does earnestly contend, however, that compromise and settlement of the partnership claim having been alternatively pleaded in the answer, and proof in support thereof having been admitted without objection, the pre-trial order should have been considered as automat-ically amended or modified to conform to the proof.

■ The definitive pre-trial order reflecting the agreement of the parties, having been entered into after full discovery, must, of course, control the subsequent course of the action. F.R.Civ.P. 16(6). We have heretofore expressed concern lest the pre-trial order become hoops of steel to bind the parties to frozen issues and have emphasized its office as a procedural tool to insure the economical and efficient trial of every case on its merits without chance or surprise. Century Refining Company v. Hall, 10 Cir., 316 F.2d 15; Holcomb v. Aetna Life Insurance Co., 10 Cir., 255 F.2d 577. As one able trial judge has said, "Treatment of the pre-trial order after entry requires an appropriate balance between firmness to preserve the essential integrity of the order, and adaptability to meet changed or newly discovered conditions or to respond to the special demands of justice. If a good order must 'say something', what it says must have more than shifting or transitory meaning. A policy of too-easy modification not only encourages carelessness in the preparation and approval of the initial order, but unduly discounts it as the governing pattern of the trial. On the other hand, an unswerving insistence upon every provision, under all circumstances, may work grave injustice in individual cases, and by repeated instances could discourage the entire bar of the court from entering into pre-trial agreements in the spirit contemplated by the rules." [1]

■ Unlike pleadings, usually based on information and belief, the pre-trial order defining the issues is the result of discovery in which, as this order recites, " * * * both parties hereto know the testimony of the other's witnesses." The pre-trial order supersedes the pleadings and becomes the governing pattern of the lawsuit. The issues having been thus defined, they ought to be adhered to in the absence of some good and sufficient rea-

---

1. See Honorable A. Sherman Christenson on "The Pre-Trial Order", 29 F.R.D. 362, 371.

son which must rest largely within the discretion of the trial court. See Clark v. Pennsylvania Railroad Company, 2 Cir., 328 F.2d 591.

 This pre-trial order reflecting the agreement of the parties was freely entered into. There is no element of surprise and no good cause is shown for its modification. The only question then is whether the pre-trial order as it stands can be flexibly construed to embrace the issue of compromise and settlement. We think not. The settlement issue is clearly outside the stipulation that Abrams is entitled to $16,931.09 if the jury finds the existence of a partnership. It is wholly inconsistent to tell the jury in one breath that if they find the parties were partners Case owed Abrams $16,931.09, and in the next breath leave the jury free to find that the claim was settled for $3,-000. While it was entirely permissible to alternatively plead the compromise and settlement as a defense, i. e. see F.R. Civ.P. 8(e) (2), if Case intended to rely upon it in the trial of the case, he must surely be required to perpetuate it in the pre-trial order and not attempt to inject it as a wholly inconsistent issue by way of a requested instruction. The trial court did not abuse its discretion to confine the issues to the pre-trial order. Cf. Miller v. Brazel, 10 Cir., 300 F.2d 283.

We also affirm the trial court's exclusion of the testimony of a witness by which Case offered to prove a conversation between him and Abrams in the witness' presence. According to the proffer, Abrams stated to Case " * * * that he had some additional expenses with reference to the Barbour matter and thought that he should receive some additional money to apply on his expenses." Case replied " * * * that he did not feel that he owed him any more * * * money, and suggested to Mr. Abrams that he take the matter up with Mr. Miller * * *".

Abram's counsel took the position that " * * * this witness has been known all the time by the defendant, that he had adequate time to advise counsel and that

this could have been summarized in the pretrial order, and his name furnished."

 It is not clear whether the proffered testimony was intended to disprove the partnership or prove the compromise and settlement thereunder. If it went to the issue of compromise and settlement, it was irrelevant under the ruling of the Court. If it went to the existence of the partnership, it was known to Case from the very beginning of the lawsuit. Case undoubtedly knew of the witness and the nature of his testimony when he announced at pre-trial that " * * * the only testimony he would offer would be that of the Defendant", and when he stipulated that " * * both parties hereto know the testimony of the other's witnesses". The witness was not newly discovered nor was the nature of his testimony first disclosed after the pre-trial order. In these circumstances the trial court did not abuse its discretion to exclude the testimony. See Globe Cereal Mills v. Scrivener, 10 Cir., 240 F.2d 330; Cf. Clark v. Pennsylvania Railroad Co., supra.

Judgment is affirmed.