Eli TRUJILLO, Plaintiff-Appellant,

v.

UNIROYAL CORPORATION, a New Jersey Corporation, Defendant-Appellee.

No. 77–1772.

United States Court of Appeals, Tenth Circuit.

Argued March 13, 1979.

Decided Nov. 6, 1979.

Emmett C. Hart, Albuquerque, N. M. (with Donaldo A. Martinez, Las Vegas, N. M., on brief), for plaintiff-appellant.

Bruce Hall, Albuquerque, N. M. (with Kenneth J. Ferguson, Albuquerque, N. M., on brief), of Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N. M., for defendant-appellee.

Before DOYLE, McKAY and LOGAN, Circuit Judges.

McKAY, Circuit Judge.

As tried, this diversity action claimed strict liability for the manufacture and sale of a defective tire which injured plaintiff when it exploded during mounting. Defendant contended the cause of plaintiff's injury was misuse by attempting to mount the 750 × 16 tire on a 16.5–inch rather than 16–inch rim.

The portion of the pretrial order relevant to this appeal set out plaintiff's claims as follows:

Plaintiff Eli Trujillo contends that the defendant Uniroyal Corporation manufactured and sold a defective tire and at the time the said tire was being installed by Eli Trujillo in a customary and usual manner with due caution and circumspection, and in a safe, proper and prudent

manner the said tire by reason of a defect blew up resulting in the plaintiff Eli Trujillo being severely, seriously and permanently injured. The plaintiff contends that Uniroyal Corporation is strictly liable under the rule of strict liability for the injuries and damages sustained by Eli Trujillo.

Record, vol. 1, at 83. Upon learning shortly before trial that the plaintiff planned to prove that defendant was liable on a "failure to warn" theory, defendant's counsel contended that the plaintiff was attempting to change the theory of his case. The trial court agreed and rejected Trujillo's tendered evidence[1] and jury instructions on the failure to warn issue. The jury found for the defendant tire company.

Trujillo contended that failure to warn was an appropriate issue under strict liability law in New Mexico. According to Trujillo, the tire sold by Uniroyal was in defective condition because there was no warning of the risk of serious personal injury to a tire mounter from: (1) attempting to mount a 16–inch tire on a 16.5–inch rim, and (2) inflating to over 40 pounds per square inch pressure while mounting.

Plaintiff testified that on the date of the accident he was attempting to mount a 750 × 16 tire on what he believed to be a 16–inch rim for a customer of the service station where he worked. He was using a tire mounting machine and was following his usual procedures when he placed the tire on the rim. He was unable to get the bead of the tire to seat against the flange of the rim at some 30 to 32 pounds of pressure per square inch, so he took the tire off and relubricated with tire lubricant. He again placed the tire on the tire mounting machine and this time inflated it to 48 pounds per square inch, but four or five inches of the bead was not seating. As he was inserting additional air, the explosion occurred.

## SCOPE OF THE PRETRIAL ORDER

A "definitive pre-trial order reflecting the agreement of the parties, having been entered into after full discovery, must, of course, control the subsequent course of the action. F.R.Civ.P. 16(6)." *Case v. Abrams,* 352 F.2d 193, 195 (10th Cir. 1965). When issues are defined by the pretrial order, "they ought to be adhered to in the absence of some good and sufficient reason." *Id.* at 195–96; *Monod v. Futura, Inc.,* 415 F.2d 1170, 1173 (10th Cir. 1969). The trial judge may therefore reject contentions not included in a proper pretrial order. *Southern Pacific Transportation Co. v. Nielsen,* 448 F.2d 121, 125 (10th Cir. 1971).

The power afforded the trial court to exclude issues or evidence from trial, however, must be derived from a *proper* pretrial order. A proper pretrial order, as envisioned by the drafters of Fed.R.Civ.P. 16, is "definitive." *See Case v. Abrams,* 352 F.2d at 195. It has sharpened and simplified the issues to be tried, *see Walker v. West Coast Fast Freight, Inc.,* 233 F.2d 939, 941 (9th Cir. 1956); *Hodgson v. Humphries,* 454 F.2d 1279, 1282 (10th Cir. 1972), and it represents "a complete statement of all the contentions of the parties." *Blanken v. Bechtel Properties, Inc.,* 194 F.Supp. 638, 642 (D.D.C.1961), *aff'd,* 112 U.S.App.D.C. 97, 299 F.2d 928 (D.C.Cir 1962).[2] If there is a properly drawn, detailed pretrial order, a trial court's determination that certain facts or issues must be excluded from trial

---

1. Trujillo tendered the following exhibits: (1) a Delta 750 × 16 tire of recent manufacture (by Uniroyal) carrying an inflation pressure of 60 p. s. i. and labeled with a mounting warning not to exceed 40 p. s. i.; (2) a Uniroyal tire showing inflation pressure of 60 p. s. i.; (3) an O.K. tire, manufactured by Uniroyal, showing inflation pressure of 60 p. s. i. labeled with mounting warning not to exceed 40 p. s. i. and a warning reading: Caution—Do not use on 16.5 inch diameter rims; (4) an O.K. tire, manufactured by Uniroyal, labeled with mounting warning not to exceed 40 p. s. i.

2. For an excellent discussion of the requirements, procedures and purposes of a proper pretrial order, see Honorable A. Sherman Christensen, *The Pre-Trial Order,* 29 F.R.D. 362 (1960).

on the basis of a pretrial order may be reversed only if there is an abuse of discretion. *See James v. Newspaper Agency Corp.*, 591 F.2d 579, 583 (10th Cir. 1979) (pretrial order specifying the witnesses to be called may be used to bar the calling of unlisted witnesses).

Proper pretrial orders are indeed powerful, but even at their best they should be "liberally construed to cover any of the legal or factual theories that might be embraced by their language." *Rodrigues v. Ripley Industries, Inc.*, 507 F.2d 782, 787 (1st Cir. 1974). This court has warned that the pretrial order "is a procedural tool to facilitate the trial of a lawsuit on its merits and not to defeat it on a technicality. We must not allow ourselves to construe the pretrial order in the spirit of a common law pleading." *Century Refining Co. v. Hall*, 316 F.2d 15, 20 (10th Cir. 1963). The reasons for avoiding overly technical applications of pretrial orders are amplified when, as in this case, the pretrial order is not properly drawn, is not definitive, specific, complete or detailed.

 The order in this case may be somewhat more brief than the pleadings, but it is no more precise; consequently, we see no reason to construe it with more precision than pleadings generally, which may be liberally amended, particularly when the court is notified before trial of the intention of a party to pursue a certain issue. *See* Fed.R. Civ.P. 15. When an adverse party is content with a boilerplate pretrial order, it cannot later demand that the trial court enforce it as though it were a specific and meaningful narrowing of the issues. Indeed, had Uniroyal deemed it necessary to clarify the particular strict liability theory relied upon by Trujillo, it could have used the pretrial process for this intended purpose.

 Construing the pretrial order in this case with the generality evidenced by its wording, we see no basis for finding that "the rule of strict liability" as referred to in the order does not encompass all three "defects" developed in the comments to the Restatement (Second) of Torts § 402 A (1965)—*i. e.*, manufacturing flaw, design defect, and failure to warn. *See Burton v. L. O. Smith Foundry Products*, 529 F.2d 108, 110 (7th Cir. 1976). The New Mexico Supreme Court has recognized that failure to give an adequate warning may render a product unreasonably dangerous for strict liability purposes. *See Skyhook Corp. v. Jasper*, 90 N.M. 143, 560 P.2d 934 (1977). In *Fabian v. E. W. Bliss Co.*, 582 F.2d 1257 (10th Cir. 1978), this court explicitly found that "New Mexico has adopted the Restatement of Torts position as to . . . strict liability." *Id.* at 1260–61. Under this position, a defect includes "the lack of adequate warnings." *Id.* at 1261. When there are only three closely related theories underlying a term of art loosely used in a pretrial order, strict construction to avoid surprise or unreasonable ballooning of the trial is not necessary.

The inadequacy of the pretrial order as a limiting device in this case may be illustrated in distinguishing two cases cited by the appellees. In *Rodrigues v. Ripley Industries, Inc.*, 507 F.2d 782 (1st Cir. 1974), it was held that the trial judge could in his discretion determine that an allegation of a functional defect in a piece of machinery was not encompassed in the pretrial order although certain "less than pellucid" descriptions might be construed as covering the defect in question. The opinion indicates, however, that the pretrial order contained lists of alleged structural defects which were specifically assented to as complete. This sort of specificity is conducive to a finding that a particular claim is rendered irrelevant by the pretrial order. In comparison, general terms, loosely used—*e. g.*, "defect" and "rule of strict liability"—cannot be fairly construed as limiting the underlying theory to be litigated.

*Rigby v. Beech Aircraft Co.*, 548 F.2d 288 (10th Cir. 1977) provides an even better illustration. Both the pretrial order, where "plaintiffs' claims were set forth *at length*," and plaintiffs' answers to interrogatories calling for a particularized statement referred only to 31-gallon fuel cells. *Id.* at 292 (emphasis added). In light of the specificity and detail of the pretrial order and the other communications between the par-

ties, the trial court could reasonably conclude that claims relating to 40-gallon cells should not be heard at trial.

## HARMLESS ERROR

Uniroyal contends that, even if the rejected evidence had been admitted at trial and appropriate instructions had been given, the evidence as a whole would not have been sufficient to support a verdict for Trujillo. *See Hallmark Industry v. Reynolds Metals Co.*, 489 F.2d 8, 14 (9th Cir. 1973), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2643, 41 L.Ed.2d 235 (1974). It contends the warnings Trujillo desired would not have prevented the explosion because (1) Trujillo already knew of the danger in mounting a 16–inch tire on a 16.5–inch rim, and (2) the overinflation of the tire was not a cause of the explosion.

We agree that, under New Mexico law, a warning of a danger known to the user is unnecessary. *Skyhook Corp. v. Jasper*, 90 N.M. 143, 560 P.2d 934, 938–39 (1977). Indeed, Trujillo admitted he knew that a 16–inch tire should not be mounted on a 16.5–inch rim. However, a belief that it should not be done because it may hurt the tire, or even that it may cause injury is different from knowing that there is a risk of explosion, of serious or even fatal bodily harm. Not merely some risk but the nature and degree of the risk must be appreciated. In contrast to this case, *Garrett v. Nissen Corp.*, 84 N.M. 16, 498 P.2d 1359 (1972), cited by Uniroyal, involved risks which were universally recognized. To the same effect is *Skyhook Corp. v. Jasper*, 90 N.M. 143, 560 P.2d 934, 938–39 (1977). Trujillo should have been permitted to show a properly instructed jury that he did not appreciate the danger of explosion, which is out of proportion to the risk he may have thought he was undertaking in mounting the tire.

If warned of the very serious consequences of attempting to mount a 16–inch tire on a 16.5–inch rim, Trujillo may have taken precautions he disregarded in this case. While the evidence may be strong that no warning would have overcome Trujillo's mistaken belief as to the size of the tire, he nonetheless was entitled under the failure to warn theory to present the jury with that possibility.

It is even clearer that failing to give instructions and excluding evidence on the desirability of a warning against overinflation was not harmless error. Trujillo did introduce evidence from which it could be inferred that overinflation of the tire was a cause of the explosion. Trujillo's expert, Dr. Alan Milner, testified that explosions occur when the mounter increases the inflation pressure in an attempt to set the tire onto the bead seat; the tire is pressed against the rim and the bead wires break in a consecutive fashion because they are not equally sharing the force of inflation. Record, vol. 3, at 261–69. Jerry Leyden, an expert testifying for Uniroyal, agreed that the wires in a tire may break "[w]hen there's excessive inflation." *Id.*, vol. 4, at 451. Dr. Milner described the high pressure marks which he found on the tire, *id.*, vol. 3, at 315, and contradicted Trujillo's understanding that he could inflate to a service pressure of 60–65 pounds per square inch while mounting. *Id.* at 319. Dr. Milner added that under the circumstances he would not have inflated to more than 40 pounds. *Id.*

We cannot say that a jury could not find for Trujillo if properly instructed. Because of the improper rejection of the failure to warn issue, we must reverse this case.