**Mary Louise TAYLOR, et al., Plaintiffs,**

v.

**The NATIONAL GROUP OF COMPANIES, INC., et al., Defendants.**

**No. 89CV7009.**

United States District Court, N.D. Ohio, W.D.

April 26, 1990.

---

Bruce Comley French, Lima, Ohio, for plaintiffs.

Jerry Johnson, Lima, Ohio, Glenn E. Wasielewski, Toledo, Ohio, for defendants.

## MEMORANDUM & ORDER

JAMES G. CARR, United States Magistrate Judge.

This is a Title VII case originally assigned to the Honorable Judge John W. Potter. On December 14, 1989, pursuant to consent of parties, Judge Potter entered a Decision as to the Magistrate Exercising Jurisdiction and ordered this action referred to the undersigned to conduct all further proceedings and enter judgement in accordance with 28 U.S.C. § 636(c). Additionally, parties did not consent to have this case appealed on the record to a district judge and agreed that appeal shall be to the Sixth Circuit Court of Appeals.

This case was initiated by complaint filed January 5, 1989 in which plaintiffs sought relief from alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, assault and battery, and numerous other common law torts. On December 8, 1989 Judge Potter issued a Memorandum and Order granting defendants' motion for summary judgment on all claims except for plaintiffs' Title VII claim of sexual discrimination and harassment. 729 F.Supp. 575. Judge Potter further ordered that plaintiffs' request for trial by jury be denied.

The cause is presently before this court on issues raised in plaintiffs' Motion for Leave to File an Amended Complaint Pursuant to FRCP 15; Reset Trial Date; and to Reconsider Certain Prior Rulings by the Court, *etc.* filed February 6, 1990. Defendants filed their response on March 9, 1990.

Plaintiffs raise the following three issues: 1) that trial date set for September 17, 1990 by order of the undersigned be changed; 2) that the undersigned reconsider Judge Potter's decisions embodied in his December 8, 1989 Memorandum and Order as to plaintiffs' intentional infliction of emotional distress claim and plaintiffs' request for jury trial; and 3) that they be permitted to file a first amended complaint pursuant to Rule 15(b) of the Federal Rules of Civil Procedure to add a pendent state claim alleging that defendants violated provisions of Chapter 4112 of the Ohio Revised Code.

Plaintiffs' first issue has been resolved. As to the second issue, plaintiffs' motion is denied. Plaintiffs' motion as to the third issue is granted.

### Trial Date

Pursuant to a pretrial conference held on March 9, 1990 I ordered that the trial date previously set for September 17, 1990 be vacated and reset for December 10, 1990, thereby addressing plaintiffs' request for change of trial date raised in the instant motion.

### Reconsideration of Prior Rulings of Judge Potter

Plaintiffs move the undersigned to reconsider Judge Potter's prior order denying the state law claim of intentional infliction of emotional distress and plaintiffs' request for a jury trial on the remaining Title VII claim. Plaintiffs' counsel devotes ten pages of a fifteen page brief to analysis of the substantive legal questions underlying the issues he raises for reconsideration but fails to explain the jurisdictional basis upon which my authority to make such determinations rests. I can find no authority, nor is any provided, to support counsel's assumption that I have jurisdiction to reconsider the prior rulings of the district court judge. For the following reasons plaintiffs' motion for reconsideration is denied.

The ground upon which plaintiffs' counsel presupposes that a federal magistrate is jurisdictionally empowered to reconsider prior rulings of a previously presiding district court judge is, at best, tenuous. While unarticulated, it would appear that plaintiffs' counsel draws his conclusion that I have jurisdiction to reconsider Judge Potter's prior rulings from the following factors: 1) that the parties have consented to their case being determined by a federal magistrate; 2) that jurisdiction is, in general, permitted under the Federal Magistrates Act, 28 U.S.C. § 631 *et seq.*, Pub.L. 90–578, Title I, § 101, Oct. 17, 1968, 82 Stat. 1108, as amended; 3) that the action was referred to a magistrate by the district judge who had previously presided over it; and 4) that the parties agreed that appeal from my rulings would not go to the district judge as permitted under Rule 3.1 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 636(c)(1) and (3).

■ The foregoing provides no support for plaintiffs' counsel's argument. It is simply not the case that a magistrate's jurisdiction is, by fiat, somehow merged with that of the district judge to an extent sufficient to vest the magistrate with the authority to reconsider and set aside or alter prior decisions of the district judge.

When satisfied, the conditions enumerated in the preceding paragraph will deprive a district judge of the authority to hear an appeal from a final determination rendered by a magistrate, see, *Freeman v. Petsock,* 820 F.2d 628 (3rd Cir.1987). Note, that this limitation on the review authority the district judge is expressly provided for by rule and statute. See, Rule 3.1 Fed.R.App.Pro.; 28 U.S.C. § 636(c)(3), (4). However, the foregoing restriction on the review authority of a district judge does not entail the conclusion that federal magistrates are vested with the authority to reconsider prior rulings of district judges. Section 636 of the Federal Magistrates Act, which establishes the jurisdiction and powers of federal magistrates, does not authorize magis-

trates to reconsider prior rulings of a district judge in referred cases.

■ Further, I find neither reason nor authority to read such prerogatives into the Act. The powers of a federal magistrate are limited relative to those of district judges.

> Magistrates are appointed by the district judges in each district. The magistrates are given all the powers previously exercised by United States commissioners, such as issuing warrants, conducting preliminary examinations, imposing conditions of release for criminal defendants, and the like. In addition, they can try misdemeanors, although defendant may elect to be tried before a judge of the district court. They can be designated to hear a wide variety of motions in both criminal and civil cases. On some of these matters the magistrate may make a determination, subject to reconsideration by a judge, while on others the magistrate may conduct an evidentiary hearing and submit to a judge proposed findings of fact and recommendations for disposition, but the judge must make a de novo determination of matters in the magistrate's recommendations to which objection is made. A magistrate may, upon the consent of the parties, conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case. Finally, magistrates may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States.

Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3505. Federal magistrates are thus, to some extent, subject to the authority of the district judge, but the converse is not true. Indeed, pursuant to 28 U.S.C. § 636(c)(6) the district court may "for good cause shown on its own motion ... vacate a reference of a civil matter to a magistrate under this subsection." It appears that the district judge always retains some degree of control over cases adjudicated in his court.

The authority of a federal magistrate is limited in a variety of ways. For the fore-going reasons I decline to review the rulings of Judge Potter denying plaintiffs' intentional infliction of emotional distress claim and plaintiffs' request for jury trial. Plaintiffs' motion in this regard is, thereby, denied.

### Amendment of Complaint and Pendent Jurisdiction

Plaintiffs seek leave to file a first amended complaint to add a state claim alleging violation of Chapter 4112 of the Ohio Revised Code. Plaintiffs assert that R.C. § 4112.99 provides for judicial remedy to violations of Chapter 4112. Plaintiffs argue that permitting the additional claim will not prejudice defendants as they are already on notice of plaintiffs' claim in this regard. Plaintiffs also argue that amending the complaint and adding the claim will effect no adverse impact upon the efficient operation of the court.

Chapter 4112 of the Ohio Revised Code is comprehensive legislation fashioned to provide various methods by which aggrieved parties may seek redress for unlawful employment discrimination. Section 4112.-02(A) of the Revised Code provides that it shall be an unlawful discriminatory practice "[f]or any employer, because of the ... sex ... of any person to discharge without just cause, ... or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Section 4112.08 provides that the pertinent sections of Chapter 4112 shall be liberally construed to achieve to purposes for which they were enacted. "R.C. Chapter 4112 was intended to add protections for victims of sexual harassment rather than reduce the protections and remedies for such conduct." *Helmick v. Cincinnati Word Processing, Inc.,* 45 Ohio St.3d 131, 135, 543 N.E.2d 1212 (1989). Construed accordingly, plaintiffs' allegations of sexual harassment and discrimination would fall within the scope of violations covered by R.C. § 4112.02(A).

Defendants oppose plaintiffs' motion to amend arguing that the addition of a pendent state law claim is inappropriate in an action brought in federal court based on an

alleged Title VII violation. Defendants argue that plaintiffs motion should be denied for the following reasons: the state law which forms the basis of the claim plaintiffs wish to add is novel and little case law has developed in Ohio to interpret it; introduction of the state law claim will consume an inordinate amount of time, effort, and expense; and the state law issue proposed by plaintiffs will predominate over or distract from the federal claim which is the basis of this court's jurisdiction.

For the following reasons I find plaintiffs' motion for leave to amend well taken.

### Amendment of Complaint

■ Amendment of complaints is controlled by Rule 15 of the Federal Rules of Civil Procedure. Rule 15(a) provides that where a party seeks leave of the court to amend a complaint "leave shall be freely given when justice so requires." Rule 15(a) Fed.R.Civ.Pro. Generally, courts liberally construe motions for leave to file amended complaints. See, *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Given this policy of liberality behind Rule 15(a) courts are obliged to give due consideration to motions to amend. *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir.1987).

Although generally recognizing the presumption in favor of granting motions for leave to amend, courts will examine various factors in order to determine whether leave to amend is warranted. These include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment. In any case, the decision to grant a motion for leave to amend is at the court's discretion and depends on the particular circumstances involved. *Foman, supra; Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479 (6th Cir.1973).

Plaintiffs refer to the Sixth Circuit case of *Howard v. Kerr Glass Manufacturing C.*, 699 F.2d 330 (6th Cir.1983) in support of the proposition that additional state claims are the proper subject of a motion to amend. Contrary to plaintiffs' contention, however, *Howard* stands only for the proposition that amendments to pleadings are to be construed liberally by the courts where there is no surprise to the adversary party. It does not expressly address the issue of amending pleadings with additional state law claims. More importantly, *Howard* is not a Title VII action and, thus, is not a particularly suitable precedent for assessing the propriety of adding a state law claim to a complaint in an action brought in federal court where jurisdiction is based solely on an alleged Title VII violation.

### Pendent Jurisdiction

■ An arguably futile amendment would be one where the movant's proposed additional state law claim is precluded because pendent jurisdiction is inappropriate. Pendent jurisdiction is proper if the following criteria are met: 1) the action is in federal court on a federal claim sufficiently substantial to confer subject matter jurisdiction on the court; 2) the state and federal claims must derive from a "common nucleus of operative fact"; and 3) the claims are such as would ordinarily be adjudicated in one proceeding. See, *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Gaff v. Federal Deposit Insurance Corp.*, 814 F.2d 311, 319 (6th Cir.1987); *Transcontinental Leasing, Inc. v. Michigan National Bank*, 738 F.2d 163, 165–66 (6th Cir.1984).

■ Even if pendent jurisdiction is shown to exist, the court has broad latitude in determining whether it is appropriately exercised in any given case. Factors a court will weigh in determining the suitability of a pendent claim include judicial economy, convenience and fairness to litigants, the unsettled nature of the applicable state law, confusion arising from treating divergent theories of relief, and the relative dominance of the state versus the federal claims. See, *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98

L.Ed.2d 720 (1988); *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

In the instant case it has already been established that the first criterion for determining the appropriateness of pendent jurisdiction has been met. Plaintiffs' Title VII claim confers subject matter jurisdiction on this court. Secondly, it is readily apparent that plaintiffs' state and federal claims derive from a "common nucleus of operative fact." The circumstances that gave rise to plaintiff, Mary Louise Taylor's, allegations of sexual harassment in the work place support a Title VII claim and a claim based on § 4112.02(A) of the Ohio Revised Code. Finally, common sense would seem to dictate that the two claims presently under consideration would ordinarily be expected to be tried in one judicial proceeding. Thus, pendent jurisdiction over plaintiffs' state law claim would not appear to be improper in this case.

However, in addition to the criteria elucidated in *United Mine Workers v. Gibbs, supra,* it has been suggested that an additional level of analysis must be added for a proper determination of the question of pendent jurisdiction. "Beyond this constitutional minimum, there must be an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim, in order to determine whether 'Congress in [that statute] has ... expressly or by implication negated' the exercise of jurisdiction over the particular nonfederal claim." *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978), *quoting, Aldinger v. Howard, supra.* Although *Owen* may be distinguishable on the basis that the question expressly dealt with in that case was the Court's pendent party jurisdiction over a non-diverse third party defendant, the language relied on by the Court was broad and spoke to pendent claims and not merely pendent parties.

Defendant contends that the additional criterion for determining the suitability of pendent jurisdiction announced by the Court in *Owen* is applicable to the present case. In this regard defendant directs the court's attention to cases decided in several district courts which have held that pendent state claims can never attach to Title VII claims because of the unique procedural characteristics and limited remedial provisions of the statute. See, e.g., *Guzman Robles v. Cruz,* 670 F.Supp. 54 (D. Puerto Rico 1987); *Frye v. Pioneer Logging Machinery, Inc.,* 555 F.Supp. 730 (D.S.C.1983); *Bennett v. Southern Marine Management Co.,* 531 F.Supp. 115 (M.D.Fla.1982); *Jong-Yul Lim v. International Institute of Metropolitan Detroit, Inc.,* 510 F.Supp. 722 (E.D.Mich.1981).

Defendants also advert to several district court cases which have declined to exercise pendent jurisdiction over related state law claims in actions where federal subject matter jurisdiction is founded on Title VII for reasons other than the alleged structural inapplicability of Title VII. See, e.g., *Billings v. Stone & Webster Engineering Corp.,* 678 F.Supp. 984 (D.Conn.1988); *Barbetta v. Chemlawn Services, Corp.,* 669 F.Supp. 569 (W.D.N.Y.1987).

Other courts have permitted pendent jurisdiction in Title VII actions, rejecting the argument that Title VII implicitly negates the addition of pendent claims. See, *Glezos v. Amalfi Ristorante Italiano, Inc.,* 651 F.Supp. 1271 (D.Md.1987); *Guyette v. Stauffer Chemical Co.,* 518 F.Supp. 521 (D.N.J.1981).

Those courts which have characterized Title VII as implicitly negating pendent jurisdiction generally rely on the argument that the remedies usually available under state law, particularly compensatory and punitive damages and the right to a jury trial, subvert the equitable and remedial purposes of Title VII. See, *Gerlach v. Michigan Bell Telephone Co.,* 448 F.Supp. 1168, 1173 (E.D.Mich.1978), and cases cited above. Further, these cases state that the intent of Congress as applied to cases brought under Title VII is that they should be "in every way expedited." 42 U.S.C. § 2000e-5(f)(5). In this regard one court has stated,

Once it is clear that private actions were intended to be expeditious, it is also

clear that the exercise of pendent jurisdiction in such actions is fundamentally inconsistent with their intended form. Indeed, some of the very purposes for which plaintiffs may seek to join state law actions, including the availability of broader relief and a jury trial, are the sort of relief and procedure that Congress implicitly rejected in favor of a streamlined remedy.

*Mongeon v. Shellcraft Industries, Inc.*, 590 F.Supp. 956 (D.Vt.1984). In the context of the mandate for expedited review explicit in Title VII, as well as a matter of comity between state and federal courts, it is arguable that needless decisions of state law should be avoided.

On the other hand the arguments relied on by those courts unpersuaded by the view that Congress intended to negate pendent jurisdiction in Title VII actions point to the fact that Congress has rejected amendments making Title VII an exclusive remedy for employment discrimination. 110 Cong.Rec. 13650–13652 (1964). See, *Glezos, supra*, 651 F.Supp. at 1274. Additionally, in its review of the Equal Employment Opportunity Act of 1972 the Senate rejected an amendment that would have deprived a Title VII claimant of the right to sue under 42 U.S.C. § 1981. See, *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459, 95 S.Ct. 1716, 1719, 44 L.Ed.2d 295 (1975), *referring to*, 118 Cong.Rec. 3371–3373 (1972).

Many of the courts that have denied pendent jurisdiction in Title VII actions have observed that the various limitations imposed by Congress on Title VII actions— e.g., the initial requirement that claims be referred to administrative agencies, 42 U.S.C. § 2000e–5(c); the permissible reference of the case to a special master, 42 U.S.C. § 2000e–5(f)(1); the absence of entitlement to a jury trial, 42 U.S.C. § 2000e–5(f)(4); and the restriction on available relief to back pay and other, generally equitable and noncompensatory and nonpunitive, awards, 42 U.S.C. § 2000e–5(g)—cannot serve to obstruct joinder of claims brought under other federal laws which do not embody these limitations. See, for example, *Jong–Yul Lim, supra*, 510 F.Supp. at 725.

In denying pendent jurisdiction to Title VII actions these courts appear to have ignored the fact that the Supreme Court has addressed itself, albeit obliquely, to this issue. "[T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes." *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 48, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). Admittedly, the issue addressed by the Court in *Alexander* involved an employee's right to a trial de novo under Title VII notwithstanding the prior submission of his claim to final arbitration under a collective bargaining agreement. Yet, the Court's statement of the Congressional intent animating the enactment of Title VII is clear. "Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination." *Id.*, at 48, 49, 94 S.Ct. at 1020. "[T]itle VII is not intended to and does not deny to any individual, rights and remedies which he may pursue under other Federal and State statutes." *Id.*, at 48, n. 9, 94 S.Ct. at 1019 n. 9 (*quoting*, Interpretive Memorandum from bill co-sponsor Senator Joseph Clark, 110 Cong.Rec. 7207 (1964)). That additional claims may provide for jury trial or permit forms of relief in addition to the equitable relief allowed under Title VII should not preclude pendent jurisdiction in cases where it is otherwise warranted.

It appears that the majority of district courts that have addressed this issue have concluded, in applying the *Owen*'s criterion to the pendent jurisdiction analysis, that Title VII implicitly negates a claimant's opportunity to raise state issues in actions whose subject matter jurisdiction is based exclusively on Title VII. I am not persuaded. It is my opinion that a proper reading of the legislative history of Title VII and its interpretation by the Supreme Court shows that Title VII does not implicitly negate pendent state claims.

The requirement that Title VII claims initially be brought before an administrative agency has little bearing on the question of whether Congress implicitly negated the exercise of federal jurisdiction over state claims that might be added if the Title VII action is subsequently brought in a district court. The permissible reference of Title VII claims to a special master, while reaching to the important concern of expediting these cases, is not dispositive of the implicit intent of Congress in regard to pendent jurisdiction. Finally, pendent state claims which afford legal remedies and jury trial would cause no greater delay than otherwise joinable federal claims which afford jury trial and remedies not available under Title VII. See, *Glezos, supra*, 651 F.Supp. at 1275.

■ It being my opinion that pendent state claims are not implicitly negated in Title VII actions, it remains to be determined whether it would be a proper exercise of this court's authority to permit plaintiffs to amend their complaint to add a claim based on Chapter 4112 of the Ohio Revised Code. "Pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Id.*, at 1275. See, also, *Gibbs, supra*, 383 U.S. at 726–27, 86 S.Ct. at 1139. The various factors weighed by courts when considering the suitability of trying state and federal claims in the same proceeding include judicial economy, convenience, fairness to litigants, the degree to which the state law is settled, the predominance of the state issue as to questions of proof, scope of issues, or remedy, and jury confusion.

Ohio Revised Code § 4112.99, as amended September 28, 1987, provides that one who violates Chapter 4112 may be subject to a civil cause of action for damages or other appropriate relief. Plaintiff presently has an action alleging violations of Chapter 4112 pending before the Ohio Civil Rights Commission. The OCRC has determined that probable cause exists to believe that a violation has been committed, and the matter has been set for hearing before an OCRC hearing examiner. Defendants have moved to delay the OCRC proceedings pending the outcome of the instant action. Plaintiffs contend that defendants would not be prejudiced if the state claim is added to the instant cause because defendants are familiar with plaintiffs' state claim in that it is presently being litigated before the OCRC.

Defendants argue that plaintiffs' state claim involves novel, unsettled, or rapidly developing theories of state law, and, therefore, pendent jurisdiction should not be exercised. Defendants correctly point out the R.C. § 4112.99 was recently amended to permit a judicial cause of action for alleged violations of Chapter 4112, having previously provided criminal penalties for those found guilty of certain violations of Chapter 4112. Defendants also correctly state that there is only one reported state court case interpreting R.C. § 4112.99. See, *Helmick v. Cincinnati Word Processing, Inc., supra.*

In assessing the factors weighed by courts when considering the suitability of trying state and federal claims in the same proceeding I fail to see how permitting the additional claim would place an undue burden on the court, be inconvenient, or be unfair to the litigants. Trial on the state claim would not significantly add to the evidentiary requirements already anticipated under the Title VII claim, and defendants are already familiar with plaintiffs' state law claim by virtue of the proceeding pending before the Ohio Civil Rights Commission. I also do not believe that the claim based on defendants' alleged violation of Chapter 4112 of the Revised Code would predominate over the Title VII issue as to questions of proof, scope of issues, or appropriate remedy.

More troubling is the issue raised by defendants with respect to the novelty and degree of development of the relevant state law. Defendants' reference to the dearth of cases interpreting R.C. § 4112.99 suggests that the court should deny plaintiffs' motion because this law has yet to be examined by Ohio courts.

However, the novelty to which defendants refer is not the novelty of the substantive statutory law of employment dis-

crimination in the State of Ohio. The substantive law of discrimination is embodied in R.C. § 4112.02 which was originally enacted in 1959 and subsequently amended several times, most recently in 1987. Rather, the novelty of R.C. § 4112.99 is that it permits an aggrieved party to pursue a civil cause of action for an alleged violation of Chapter 4112, where previously it subjected certain classes of violators to criminal penalty. Admittedly, in this context, § 4112.99 is uncharted territory, but this novelty is not comparable to an absence of development in an area of substantive state law that would best be left resolved by the courts of the State of Ohio before it can be addressed by the federal courts.

Defendants' argument in this regard is not well taken. I find that pendent jurisdiction is permissible in Title VII cases, and I further find that it is properly allowed in the instant matter. Therefore, plaintiffs' motion for leave to amend is granted.

THEREFORE for the reasons stated herein, good cause appearing it is

ORDERED that plaintiffs' Motion for Leave to File an Amended Complaint shall be, and hereby it is, GRANTED, and it is

FURTHER ORDERED that plaintiffs' Motion to Reconsider Certain Prior Rulings by the Court shall be, and hereby it is DENIED.

IT IS SO ORDERED.