## Williams v. CAP Gemini America
## Case No. 56498
## Cuyahoga County, (8th)
## Decided January 25, 1990
[Cite as 1 AOA 272]

*For Plaintiff-Appellant, David A. Forrest, Esq., Jeffries & Monteleone Co., 33 Public Square Building, No. 1308, Cleveland, OH 44113,*

*For Defendant-Appellee, William Viscomi, Esq., 1501 Euclid Avenue, Cleveland, OH 44115.*

MATIA, J.,

Plaintiff-appellant, Marvin Williams, appeals from the entry of summary judgment by the Cuyahoga County Court of Common Pleas in favor of defendant-appellee, CAP Gemini America, Inc.

Appellant contends that his relationship with appellee was something more that an

"at-will" employment, such that appellee's discharge of appellant after approximately one hundred days was improper. Appellee directs attention to the language of a document signed by appellant September 11, 1987 which includes a clause that the employment relationship was strictly "at-will."

On January 15, 1988, appellant filed a complaint alleging causes of action for breach of contract, promissory estoppel, wrongful discharge, unjust enrichment, and infliction of emotional distress. On May 31, 1988, appellee moved for summary judgment, relying solely on a brief affidavit of Thomas Carlson, appellee's Cleveland branch manager, stating simply that appellant signed a contract providing that the employment was at the will of either party.

Appellant opposed appellee's motion for summary judgment, attaching (1) a detailed affidavit of appellant; (2) an "offer letter" of appellee dated August 28. 1987, and including an annual rate of pay and commission wherein appellant's signature appears, specifically denoting his acceptance of appellee's offer; (3) an "offer letter" from appellee to one Vishnu Sharma, attached for comparison to appellant's offer letter (which comparison will be discussed further *infra*); and (4) the July 5, 1988 deposition testimony of Thomas Carlson. While appellant's offer letter was incorporated by reference in appellant's affidavit, the Sharma offer letter was properly brought to the trial court's attention by way of the deposition testimony of appellee's employee Thomas Carlson, and was attached as an exhibit thereto. These materials offered by appellant paint a somewhat more complicated picture of the events leading up to this lawsuit and, in our opinion, raise genuine issues of material fact not negated by appellees solitary affidavit.

On September 20, 1988, summary judgment was entered by the trial court in favor of appellee. Appellant timely filed notice of appeal to this court, assigning two errors for our review.

### I. PROMISSORY ESTOPPEL

In his first assignment of error, appellant states:

"THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF-APPELLANT'S CLAIMS INVOLVING PROMISSORY ESTOPPEL ARISING OUT OF HIS EMPLOYMENT RELATIONSHIP WITH APPELLEE AS THE DOCUMENTARY EVIDENCE SUBMITTED BY BOTH PARTIES DEMONSTRATED GENUINE ISSUES OF FACT CONCERNING THE MATERIAL FACTS INVOLVED."

Appellant claims that there is genuine doubt as to whether his reliance on alleged promises of appellee resulted in detriment to appellant, thereby estopping appellee from denying that theirs was something more than an "at-will" employment relationship. We agree that there is such doubt.

Civ. R. 56(C) provides in part:

"* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * *"

If, upon analysis, reasonable minds could come to differing conclusions, then the motion for summary judgment should be overruled. *Hounshell* v. *America State Ins. Co.* (1981), 67 Ohio St. 2d 427. While the burden rests initially on the moving party to establish that there exist no genuine issues of material fact, *Hamlin* v. *McAlpin Co.* (1964), 175 Ohio St. 517, once the moving party supports its motion as provided in Civ. R. 56, then the nonmoving party has the burden to rebut by supplying evidentiary materials of its own which set forth specific facts showing the existence of one or more genuine issues for trial. *Whiteleather* v. *Yosowitz* (1983), 10 Ohio App. 3d 272.

In the present case, we note at the outset that appellee's motion set forth *no* evidence negating appellant's claims for emotional distress and unjust enrichment. Thus, insofar

as the trial court's ruling summarily adjudged those claims, we find such ruling in error.

As noted previously, appellee offered only the affidavit of Cleveland branch manager Thomas Carlson to support its motion for summary judgment, which affidavit stated only that appellant entered into a contract on September 11, 1987, containing an "at-will" clause. In opposition thereto, appellant essentially avers that prior to August 28, 1987, Mr. Carlson, who had previously worked with appellant at G.E., recruited him away from a $65,000 per year job at G.E. with promises that employment security "protections would be provided" by appellee, and that appellant would be allowed sufficient time to establish himself at appellee's Cleveland branch. Appellant stated that he received a letter from appellee on August 28, 1987, offering him a position of employment. Appellant believes that his acceptance of such offer, and the detailed pay and commission terms thereof, constituted his employment contract with appellee. Appellant further stated in his affidavit that he was never informed that he would have to sign any other agreement, nor that the employment was to be at the will of either party. Had he been so informed, appellant would not have left his secure job at G.E.

Glaringly absent from appellee's motion brief and meager affidavit is a recognizance of appellant's position that the document purported by appellee to establish the "at-will" nature of the employment relationship was not signed by appellant *until after he had quit his job at G.E. and arrived to start work at appellee's Cleveland branch.* Moreover, appellant contends that such document was presented to him on his first day with appellee among a mass of forms, and that he was told it was merely a confidentiality and non-compete agreement.

Incorporated by reference through appellant's affidavit stands the aforementioned offer letter of August 28, 1987. Such letter included a starting annual pay rate and commission arrangement, comparable to appellant's salary at G.E., and expressly evidences an offer and acceptance of the position of sales representative at appellee's Cleveland office. Nowhere in such letter is there any mention of the requirement of a future signed agreement, nor is there language that would reveal the intent of an "at-will" employment relationship.

In contrast, an offer letter sent by appellee to Vishnu Sharma on November 25, 1987, *notes specifically that the proposed employment would be at-will, and that a further agreement had to be executed to that effect. Such further agreement was physically attached to the Sharma offer letter.*

Finally, appellant directed the trial court's attention to the deposition testimony of Mr. Carlson, which we view in a light most favorable to appellant. Therein, Mr. Carlson admitted that he recruited appellant, with whom he had worked at G.E. in a supervisory role. Mr. Carlson represented to appellant before hiring him that the appellee company was "solid", although his stated reason for appellant's discharge was "financial." Mr. Carlson testified that his and appellant's "negotiated agreement * * * was put into that offer letter" (Tr. 26), and that he told appellant that the offer letter "would encapsulate what [they'd] discussed" (Tr. 39). Concerning the disparity between the Sharma offer letter and that of appellant, Mr. Carlson testified that such offer letters are but "boiler plate language," and had been used by the company at least as long as he, Mr. Carlson, had been there employed. When specifically confronted with the differences between the Sharma offer letter and the appellant's, however, Mr. Carlson had no identifiable justification or excuse for the disparity (Tr. 47-48). Otherwise, Mr. Carlson stated that he informed appellant that this was to be an employment at will, that appellant knew that a future agreement would have to be signed to that effect, and that appellant in fact signed such an agreement.

In *Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, the Ohio Supreme Court reversed the grant of summary judgment, holding that the doctrine of promissory estoppel may apply in situations otherwise presenting an employment at will.

"* * * The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee."

*Id.* at paragraph 3 of syllabus; *Helmick* v. *Cincinnati Word Processing, Inc.* (1989), 45 Ohio St. 3d 131, at 136.

Whether representations were in fact made, whether appellant relied thereon to his

detriment, and the reasonableness of such reliance is a question of fact for the jury. *Kelly v. Georgia-Pacific Corp.* (1989), 46 Ohio St. 3d 134, at 140; *Mers, supra*, at 105; cf. *Gathagan v. Firestone Tire & Rubber Co.* (1985), 23 Ohio App. 3d 16.

Upon the present state of the record, we find that appellee had failed to negate genuine issues of material fact regarding the appellant's claim for promissory estoppel , and was not entitled to judgment as a matter of law. Accordingly, summary judgment was improperly granted and appellant's first assignment of error is well taken.

## II. IMPLIED CONTRACT

Appellant contends in his second assignment of error:

"THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT AS THE DOCUMENTARY EVIDENCE SUBMITTED BY BOTH PARTIES DEMONSTRATE GENUINE ISSUES OF MATERIAL FACT CONCERNING WHETHER OR NOT AN IMPLIED CONTRACT OF EMPLOYMENT EXISTED BETWEEN APPELLANT AND APPELLEE.

Another exception to the employment-at-will doctrine is the theory of implied contract. As stated in *Mers, supra*, at 103-104:

"In [*Henkel*, v. *Educ. Research Council* (1976), 45 Ohio St. 2d 249], this court stated that the 'facts and circumstances' surrounding an at-will agreement should be considered to ascertain if they indicate what took place, the parties' intent, and the existence of implied or express contractual provisions which may alter the terms for discharge. Appellant alleges, *inter alia*, that oral representations were made which limited the [employer's] right to discharge him. '[T]he character of the employment, custom, the course of dealing between the parties, or other fact which may throw light upon the question' can be considered by the jury in order to determine the parties' intent. *Bascom* v. *Shillito* (1982), 37 Ohio St. 431, 434. Employee handbooks, company policy, and oral representations have been recognized in some situations as

comprising components or evidence of the employment contract. E.g., *Hedrick* v. *Center for Comprehensive Alcoholism Treatment* (1982), 7 Ohio App. 3d 211; *Helle* v. *Landmark Inc.* (1984), 15 Ohio App. 3d 1."

The Ohio Supreme Court noted in *Kelly, supra*, at 139, that:

"* * * oral representations have been recognized in some situations as comprising components or evidence of the employment contract. * * *

"At the heart of the *Mers* opinion is the recognition that the history of relations between an employer and employee may give rise to contractual or quasi-contractual obligations despite the fact that such relations arose in an employment-at-will context. Accordingly, the facts and circumstances surrounding an oral employment-at-will relationship, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the *trier of fact* in order to determine the explicit and implicit terms concerning discharge." (Citations omitted.)

Further, this court stated in *Stearns* v. *Ohio Savings Ass'n.* (1984), 15 Ohio App. 3d 18, at 19:

"* * * *an agreement for the period of time mentioned as that for payment, or as the basis for payment, is indicated* * * * if, as the principal has notice, the employee has made an important change in his general relations in order to accept the position, such as the removal of himself and his things to a new place; *or if he has given up a position of some value in order to enter the employment.* * * *"* (Emphasis added and emphasis in original).

Moreover, the determination of contractual intent involves questions of fact for a jury. Cf. *Cohen & Co.* v. *Messina* (1985), 24 Ohio App. 3d 22. Appellant claims that the offer letter of August 24, 1987, which included an annual rate of pay, constituted his employment contract, and that oral representations made by appellee concerning job security should be considered as

an implied component of his employment agreement. Since appellee did not demonstrate the absence of genuine issues of material fact on this issue, summary judgment was improvidently granted. Appellant's second assignment of error is well taken.

Reversed and remanded.

CORRIGAN, P.J. and
SWEENEY, J., Concur.